UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAVIER PALACIOS,

      Plaintiff,

v.

DITECH FINANCIAL, LLC,

      Defendant.

No. 15-CV-14044-LTS

**REPORT AND RECOMMENDATION REGARDING DEFENDANT DITECH FINANCIAL LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS (Dkt. No. 13)**

CABELL, U.S.M.J.

The plaintiff, Javier Palacios ("the plaintiff"), has brought a five count complaint against the current servicer of his residential mortgage, DiTech Financial, LLC ("the defendant"). The defendant has in turn moved for judgment on the pleadings. As discussed below, I recommend that the motion be granted in part and denied in part.

## I. BACKGROUND

### A. Relevant Facts

The facts alleged in the complaint are accepted as true for purposes of the present motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). In 2005 the plaintiff purchased a condominium in Winthrop. He granted a mortgage to his lender, Leader Bank, who in turn assigned the mortgage

and note to Bank of America, N.A.  In December of 2011 Bank of America, N.A. transferred and assigned the mortgage to the defendant, then known as Green Tree Servicing, LLC.[1]

The complaint does not allege that the plaintiff missed any mortgage payments, and the plaintiff did not concede at oral argument that he had missed any mortgage payments.  That is presumably what happened, though, because the defendant initiated foreclosure proceedings on the plaintiff's residence in October 2012.  (Dkt. No. 1-1 [Complaint] at Ex. F).

The plaintiff requested a loan modification under the Home Affordable Modification Program (HAMP), although it is not clear whether he did so before or after the defendant began the foreclosure process.  Regardless, the defendant denied the plaintiff's request for a loan modification.

Between April 4, 2014, and July 16, 2014, the plaintiff sent multiple letters to the defendant demanding that the foreclosure proceedings be put on hold to give the plaintiff time to appeal the denial of his loan modification request.  (*Id.* at Exs. K-N).  Notably, none of these letters claimed that there were any errors with the plaintiff's account balance, or with the processing of mortgage payments, and none of the letters requested any information about these items.  (*Id.*)

Then, on April 15, 2015, the defendant reportedly approved the plaintiff's request for a permanent loan modification.  (*Id.* at ¶ 18).  That did not resolve everything, however; the plaintiff disputed the balance the defendant claimed he owed.  (*Id.*).  On May 4, 2015, the plaintiff sent the defendant a letter stating that he had "requested additional information to support [the] loan balance and all charges included into said balance."  (*Id.* at Ex. O).  The letter

---

[1] According to information in the record, DiTech Mortgage Corporation merged with and into Green Tree Servicing LLC on August 31, 2015.  Green Tree Servicing LLC was the surviving company but it immediately changed its name to DiTech Financial LLC.  For purposes of the present motion, the Court will treat any action taken by Green Tree Servicing LLC as an action taken by the defendant.  The defendant does not object to proceeding in this way.

did not specify when the plaintiff had made this request, and did not provide any details

regarding the plaintiff's belief that the mortgage balance was incorrect.  (The complaint does not

do so either.)  Rather, the May 4, 2015 letter attached a loan modification agreement, apparently

from the defendant.  The modification agreement had signature lines for both parties; the

plaintiff had signed but the defendant had not.  (*Id.*)

     The plaintiff began to submit monthly mortgage payments as though the modification

agreement was in effect but the defendant rejected them.  In July 2015, and again in August

2015, the defendant returned the payments to the plaintiff along with a letter stating that the

payment was insufficient to reinstate the plaintiff's account.  (*Id.* at Exs. Q, S).

     On August 30, 2015, the plaintiff sent a letter to the defendant threatening legal action.

On page three of the letter, the plaintiff requested five categories of documents, including "all

charges and credits to [the plaintiff's] account" and an "itemization or copy of invoices for

services charged against [the plaintiff's] account."  (*Id.* at Ex. R).  The defendant acknowledged

receipt of the letter but never provided the requested documents.

     In October 2015, the defendant reinstituted foreclosure proceedings.  (*Id.* at ¶ 32).

### B.  <u>The Complaint</u>

     The complaint advances five causes of action.

- Count I is for the defendant's "failure to render an accounting."  It alleges that the defendant failed to respond to the plaintiff's request for documentation regarding his account.  At oral argument, the plaintiff described this claim as "derivative" of his claim in Count III for violation of the Fair Debt Collection Practices Act.

- Count II is for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617.  It alleges that the defendant failed to do several things it was required to do.  Specifically, the defendant allegedly failed to provide the plaintiff with a proper foreclosure notice, failed to properly identify the underlying debt owner and servicer, refused to allow the plaintiff to reinstate his account after default, unlawfully accelerated the mortgage, and failed to respond to the plaintiff's "qualified written

requests" ("QWR's") for information about his mortgage prior to initiating foreclosure proceedings.

- Count III is for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p.  It alleges that the defendant used deceptive practices to collect the amounts due under the loan, including failing to identify the holder of the note and failing to provide requested documentation.

- Count IV is for violation of the Home Affordable Modification Program ("HAMP").  It alleges that the defendant engaged in unlawful "dual tracking," that is, it pursued foreclosure while it also considered the plaintiff's loan modification request, and/or a pending QWR.[2]

- Count V is for breach of the implied warranty of good faith and fair dealing.  The complaint does not identify any specific contract for which the implied covenant was breached.  The plaintiff did not clarify this omission at oral argument and he described this count as a "catch-all."

## C.  **The Defendant's Motion**

With respect to the accounting claim in Count I, the defendant argues that a plaintiff under Massachusetts law is only entitled to an accounting where there is a fiduciary relationship between the parties.  He argues that this claim necessarily fails because the parties do not have such a relationship here.

With respect to the RESPA claim in Count II, the defendant argues that the letters the defendant relies upon do not meet the requirements of a "qualified written request" under RESPA.  It argues further that the plaintiff fails as required to allege damages as a result of any RESPA violation.

---

[2]  This claim appears to be inconsistent with the plaintiff's factual allegation that he actually was granted a loan modification.  At oral argument, the plaintiff clarified that his legal theory is that the defendant did grant his modification request but thereafter refused to complete the paperwork and instead moved ahead with foreclosure proceedings.

With respect to the FDCPA claim in Count III, the defendant argues that the complaint does not plead sufficient facts to establish that the defendant is a debt collector under the FDCPA because it does not allege that the plaintiff was in default on his mortgage before the defendant began servicing his loan.

With respect to the HAMP claim in Count IV, the defendant argues that HAMP does not provide for a private right of action.

Finally, the defendant's brief does not address the plaintiff's claim in Count V of a breach of the implied covenant of good faith and fair dealing.  At oral argument the defendant argued that an implied covenant claim is derivative of a contract claim, and the claim fails here because the complaint does not identify a contract.

## II.   ANALYSIS

### A.  <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  In deciding a Rule 12(c) motion, the court applies the same standards applicable to a Rule 12(b)(6) motion.  *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (citing *Curran v. Cousins*, 509 F.3d 36, 43-44 (1st Cir. 2007)).  The key difference is that a Rule 12(c) motion comes after the close of pleadings and is therefore based on the factual allegations in both the complaint and the answer.  *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 8 (1st Cir. 2002).  As with Rule 12(b)(6) motions, the court must assume the truthfulness of the material facts alleged in the complaint.  Moreover, all inferences reasonably drawn from these facts must be construed in favor of the responding party.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *see also Perez-Acevedo*, 520 F.3d at 29 ("Because a Rule 12(c) motion calls for an

assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom.") Thus, "a court should "treat[ ] any allegations in the answer that contradict the complaint as false." *Santiago v. Bloise*, 741 F. Supp. 2d 357, 360 (D. Mass. 2010) (citing *Goodman v. Williams*, 287 F. Supp. 2d 160, 161 (D.N.H. 2003)).

Dismissal under Rule 12(b)(6) and, by extension, under Rule 12(c), is appropriate if the plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and original alterations omitted). "'The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."' *Cayo v. Fitzpatrick*, 95 F.Supp.3d 8, 10 (D. Mass. Mar. 24, 2015) (quoting *Ocasio–Hernàndez v. Fortuño–Burset*, 640 F.3d 1, 13 (1st Cir. 2011)). To determine whether a complaint crosses the plausibility threshold, "the reviewing Court [must] draw on its judicial experience and common sense.'" *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679)). Where "the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).

## B. <u>Discussion</u>

### 1. Count I does not state an accounting claim because it does not allege facts sufficient to show the parties had a fiduciary relationship.

Count I seeks an accounting, which in essence is an examination of two parties' dealings to determine who owes what to whom. Under Massachusetts law, however, an accounting is an equitable remedy which is available only where there is as an initial matter a fiduciary

relationship between the parties. *Chedd-Angier Prod. Co., Inc. v. Omni Publ'ns Int'l, Ltd.*, 756 F.2d 930, 937 (1st Cir. 1985). Generally, the lender-borrower relationship does not give rise to any fiduciary duties. *Gavin v. Sovereign Bank*, No. 06-12314-DPW, 2008 WL 2622839, at *7 (D. Mass. Jun. 30, 2008); *Corcoran v. Saxon Mortg. Servs., Inc.*, No. 09-11468-NMG, 2010 WL 2106179, at *4 (D. Mass. May 24, 2010). Because the plaintiff has not explained how the parties' dealings have given rise to a fiduciary relationship, or even alleged that there is a fiduciary relationship, he has not plead facts establishing that he is entitled to an accounting. Judgment should therefore be entered in the defendant's favor on Count I.[3]

### 2. Count II narrowly states a RESPA claim for failure to respond to the plaintiff's August 30, 2015 letter (Exhibit R).

RESPA was passed in order to reform the settlement process for residential real estate and to "protect consumers from unnecessarily high settlement charges resulting from" abuses in the settlement process. *See In re Rodriguez*, 377 B.R. 1, 6 (Bankr. D.P.R. 2007) (citing American Law Reports, 142 A.L.R. Fed. 511). RESPA requires that mortgage lenders acknowledge receipt of and respond to a borrower's QWR within a specified time frame. 12 U.S.C. § 2605(e) ("If any servicer of a federally related mortgage loan receives a qualified written request from the borrower…for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days…"). A lender who fails to respond to a QWR as required is liable for the borrower's

---

[3] The plaintiff's brief does not address the defendant's argument regarding Count I. The plaintiff urged at oral argument that Count I is essentially derivative of his FDCPA claim in Count III. The Court interprets this to mean that, assuming the defendant is found to have engaged in unfair debt collection practices as alleged in Count III, the plaintiff would be entitled to an accounting under Count I. To that extent, and as discussed in Section II.B.3, *infra*, the claim fails because the complaint fails in Count III to allege facts sufficient to show that the defendant is a debt collector for purposes of the FDCPA.

"actual damages" and "additional damages" in cases involving a "pattern or practice of noncompliance" with RESPA.  12 U.S.C. § 2605(f).

Important here, the mere fact that a borrower sends his lender a letter complaining or asking about something does not make that letter a QWR.  RESPA defines a QWR to include a letter that "(1) reasonably identifies the borrower's name and account, (2) either states the borrower's 'reasons for the belief . . . that the account is in error' or 'provides sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seeks 'information relating to the servicing of the loan.'"  *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 36 (D. Mass. 2014) (citing 12 U.S.C. § 2605(e)(1)(B)).[4]

The plaintiff contends that six letters he sent to the defendant, attached as Exhibits K, L, M, N, O and R, constitute QWR's to which the defendant failed to respond.  The defendant argues that the letters fail to contain at least one of the necessary elements mentioned above and therefore do not constitute QWR's.  The Court has reviewed the letters.  All six of the letters satisfy subsection (e)(1)(B) because each identifies the plaintiff by name and account number and also sufficiently identifies the information the plaintiff was seeking from the defendant.[5]

---

[4] These three requirements come from a consideration of two RESPA provisions together, subsections 2605(e)(1)(A) and (B).  Subsection (e)(1)(A) provides that the QWR must relate to "information relating to the servicing of [the borrower's] loan."  Subsection (e)(1)(B) provides that "a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that— (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

[5] The defendant argues that a letter must specifically identify an account *error* to qualify as a QWR but the Court rejects this argument.  The Court invited the submission of case law on this issue when the argument was raised at oral argument but no additional authority was provided.  In any event, the statute does not appear to mandate that a letter specifically identify an account error.  Rather, it provides that a QWR must either identify an account error *or* provide "sufficient detail . . . regarding other information sought . . . ."  12 U.S.C. § 2605(e)(1)(B).  The plaintiff's correspondence did not identify any account errors but they did provide sufficient detail regarding other information sought by the plaintiff.

However, with the exception of one letter discussed below, none of the letters seeks "information relating to the servicing of [the borrower's] loan" as required by subsection (e)(1)(A).

"Servicing" under RESPA means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). The five letters referenced as Exhibits K-O do not relate to the servicing of the plaintiff's loan. Rather, they relate exclusively to the plaintiff's efforts to obtain a loan modification or to forestall foreclosure.[6] Because the letters do not relate to the servicing of his loan, they do not qualify as a QWR under RESPA. *Gates v. Wachovia Mortg*. FSB, No. 09-02464-FCD/EFB, 2010 WL 2606511, at *3 (E.D. Cal. June 28, 2010); *see also O'Connor*, 992 F. Supp. 2d at 36 (noting that to be a QWR, a letter from a borrower must relate to servicing, which "ensures that the statutory duty does not arise with respect to all inquiries or complaints"). Accordingly, the defendant cannot be liable under RESPA for failing to respond to them. *Gates*, 2010 WL 2606511, at *4 (granting motion to dismiss without leave to amend RESPA claim where plaintiff's letter to lender was not a QWR because it did not relate to servicing and therefore "there can be no liability for [lender's] failure to provide a written response"). *See also Consumer Solutions REO, LLC. v. Hillery*, 658 F. Supp. 2d 1002 (N.D. Cal. 2009) (dismissing RESPA claim with prejudice because plaintiff's "QWR" disputed the validity of a loan and not its servicing); *MorEquity, Inc. v. Naeem*, 118 F.

---

[6] Exhibit K states that it follows a conversation regarding the defendant's "refus[al] to continue the foreclosure sale . . . based upon the decision by the lender to reject [the plaintiff's] loan modification application." Exhibit L is a transmittal letter for a "loan modification package." Exhibit M is a request to "preserve all telephone conversations" with the plaintiff for use as evidence in threatened litigation regarding the plaintiff's "denied loan modification." Exhibit N states that it is a "pre-suit demand for preservation of evidence" and requested that the foreclosure of the plaintiff's home be postponed "pending review of [his] RMA application." Exhibit O is a transmittal letter for an "executed loan modification." (Dkt. 1-1 at Exs. K-O).

Supp. 2d 885, 901 (N.D. Ill. 2000) (dismissing plaintiff's RESPA claim after finding that none of the irregularities alleged in the "QWR" related to servicing as defined by section 2605).

But one letter, the plaintiff's August 30, 2015 letter (Ex. R), states that it serves as both a "qualified written request" as well as a "pre-litigation demand pursuant to Massachusetts General Laws Chapter 93A." In that regard, the letter seeks information from the defendant regarding potentially unfair and deceptive acts regarding its treatment of the plaintiff's loan modification request, but also requests comprehensive information on the charges and credits to the plaintiff's account.[7] (Dkt. No. 1-1 at Ex. R). It is not well settled whether a letter that relates in part to something other than the servicing of a loan should properly qualify as a QWR. As one court in this district has noted, the case law on letters mixing servicing and non-servicing requests is "not particularly helpful." *Santander Bank, Nat'l Ass'n v. Sturgis*, No. 11-10601-DPW, *13, 2013 WL 6046012 (D. Mass. Nov. 13, 2013). Courts that have considered the question have generally been able to avoid answering it because the plaintiff's case suffered from other defects – most commonly the failure to allege actual damages. *See id.* at *14 (granting summary judgment on RESPA claim where plaintiff did not suffer any damages); *O'Connor*, 992 F. Supp. 2d at 36 (declining to decide whether letter containing both servicing and non-servicing requests was a QWR where the defendant actually had responded to the letter).

In this case, the plaintiff does allege to have been harmed by the defendant's failure to respond to his letter and it is therefore necessary to consider whether Exhibit R should be considered a QWR for purposes of RESPA.[8] In doing so, the Court is mindful of the public

---

[7] The letter asks for "a full and complete history of all charges and credits to Mr. Palacios' account," as well as a "full and complete itemization or copy of invoices for services charged against Mr. Palacios' account as rendered by third parties." (Dkt. No. 1-1 at Ex. R).

[8] The Court's consideration of this issue extends only to Exhibit R as it is raised at this juncture of this case. The Court does not purport to decide as a categorical matter whether any letter mixing servicing and non-servicing requests should (or should not) constitute a QWR.

policy concern that "RESPA and the QWR regulation were not designed, and should not be used, as a vehicle to permit in default borrowers to flood their lender with documentation requests, on the hope that a failure to timely comply will lead to an affirmative cause of action, or a defense to a collection or foreclosure action." *Santander Bank, Nat. Ass'n.*, 2013 WL 6046012 at *14 (citing *Eifling v. National City Mortg.*, No. CV10–5713 RBL, 2011 WL 893233 at *3 (W.D. Wash. March 15, 2011)).

There is at least some basis to question whether that is what the plaintiff was doing here. The letter appears to be more about the status of the plaintiff's loan modification request than it is about the servicing of his loan, and the plaintiff apparently did not raise any concerns about loan servicing until well after foreclosure proceedings had been initiated, suggesting the overarching goal of the letter (as with the others) was to assist in obtaining the modification and stopping the foreclosure process. Nonetheless, because the Court must draw all reasonable inferences in favor of the plaintiff at this early stage of the proceedings, the Court will assume that the plaintiff sent the letter and requested the documents he did because of a legitimate concern regarding the calculation of his account balance. Time and information adduced through the discovery process will help determine whether there is actual merit to this claim.

In sum, the Court finds that Count II states a claim for violation of RESPA to the extent the claim is based on the defendant's failure to respond to the portion of the plaintiff's August 30, 2015 letter containing questions about the servicing of the plaintiff's loan. *See McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1094–95 (W.D. Wash. 2013) (treating mixed request as a QWR, but noting that the lender "may have been justified in ignoring requests for information that were unrelated to the servicing of the plaintiff's loan").

### 3.   Count III should be dismissed because the plaintiff has not alleged facts sufficient to show that the defendant was a "debt collector" under the FDCPA.

To state a claim under the FDCPA, the plaintiff must allege that: 1) he has been the object of collection activity arising from a consumer debt; 2) the defendant is a "debt collector;" and 3) the defendant engaged in conduct that the FDCPA prohibits.  *Carrington v. Chrysler Fin.*, No. 10-cv-1024 NGG VVP, 2010 WL 1371664, at *1 (E.D.N.Y. Apr. 6, 2010).  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Courts have interpreted the FDCPA as excluding "originating creditors and their assignees, as well as loan servicers who obtain a debt prior to default, from the definition of an FDCPA debt collector."  *Vallecastro v. Tobin, Melien & Marohn*, No. 3:13-CV-1441SRU, 2014 WL 7185513, at *3 (D. Conn. Dec. 16, 2014) (citations omitted).  Those who do nothing more than institute foreclosure proceedings are also outside the FDCPA's definition of a "debt collector."  *Speleos v. BAC Home Loans Servicing, LP*, 824 F. Supp. 2d 226, 233 (D. Mass. 2011) (holding that law firm that instituted foreclosure proceedings on behalf of lender was not engaged in debt collection because the FDCPA specifically exempts security interest enforcement from its definition of "debt collector").

Distilled and put more simply, the defendant would not qualify as a "debt collector" under the FDCPA if it started servicing the plaintiff's loan before the plaintiff defaulted, assuming the plaintiff did in fact default.  Rather, the plaintiff must, in order to state a claim, plead that the defendant acquired his account after the plaintiff was in default, and took collection actions other than merely instituting a foreclosure proceeding.

The plaintiff does not do so here.  The complaint does not allege that the plaintiff's mortgage was placed into default before the defendant began servicing his loan.  Indeed, the Court at oral argument asked about the complaint's silence on the issue of whether the plaintiff had defaulted on his mortgage, and the plaintiff refused to concede that he had defaulted at all. Assuming then that the plaintiff's account was in good standing when the defendant began servicing it, or was at least not in default, the defendant cannot be considered a debt collector under the FDCPA.  15 U.S.C. § 1692a(6)(F)(iii) (stating that the term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person").  Count III should therefore be dismissed, but with leave to amend to address these pleading deficiencies if there is a good faith basis to do so.

**4.  Count IV states a claim under M.G.L. c. 93A for misleading and unfair violations of HAMP.**

"While the HAMP program was intended to benefit homeowners by helping them avoid foreclosure, the majority of courts considering the issue have held that consumers have no private cause of action as third party beneficiaries to enforce HAMP violations by their servicers."  *In re Cruz*, 446 B.R. 1, 4 (Bankr. D. Mass. 2011) (dismissing borrower's HAMP claim).  However, a servicer who violates HAMP by engaging in conduct that would be independently actionable under M.G.L. c. 93A (Chapter 93A) may be held liable under Chapter 93A.  *Dell v. American Home Mortgage Servicing, Inc.,* 935 F. Supp. 2d 299, 306 (D. Mass. 2013); *see also Okoye v. Bank of New York Mellon*, No. 10-11563-DPW, 2011 WL 3269686, at *8 (D. Mass. Jul. 28, 2011) (holding that HAMP violations are actionable under Chapter 93A where they are "independently actionable" and recovery is "compatible with the objectives and enforcement mechanisms of HAMP").

13

Whether conduct is actionable under Chapter 93A turns on whether that conduct is "unfair or deceptive," something for which "Massachusetts lacks a precise test." *Hanrahran v. Specialized Loan Servicing, LLC*, 54 F.Supp.3d 149, 154 (D. Mass. 2014).  Massachusetts case law does, however, contain "helpful guideposts" for assessing whether conduct is deceptive or unfair.  *Id*.  Deceptive conduct has been described as that which "has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently than they otherwise would have acted."  *Id*. (citing *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381 (2004)). Factors to consider when determining whether conduct is "unfair" include: 1) whether the practice is within at the least the penumbra of some common-law, statutory, or other established concept of unfairness; 2) whether it is immoral, unethical, oppressive or unscrupulous; and 3) whether it causes substantial injury to consumers."  *Id*. (citing *Mass Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir. 2009)

With these principles in mind, courts in this district have held that a plaintiff states a Chapter 93A HAMP claim where the lender allegedly misrepresented the status of the plaintiff's modification application, where the lender allegedly did not honor its promise to modify the loan once the borrower met certain enumerated qualifications, and where the lender's explanation for denying a modification application allegedly was untruthful.  *See Blackwood v. Wells Fargo Bank, N.A.*, No. 10-10483-JGD, 2011 WL 1561024, at *4 (D. Mass. Apr. 22, 2011) (misrepresentations about status of application); *Okoye*, 2011 WL 3269686 (failure to honor promise to grant permanent modification if borrower complied with terms of temporary modification); *Dell*, 935 F. Supp. 2d at 306 (lender allegedly promised to grant modification if borrower was eligible, but denied modification because of cap on number of eligible borrowers it would grant modifications for in any given loan pool); *Hanrahan*, 54 F. Supp. 3d at 156

(application rejected for "dubious reasons" after substantial delay in processing).  Similar to the

plaintiff's claim here, at least one court in this district has considered the possibility that it might

be inherently misleading to proceed with foreclosure while a loan modification application is

pending.  *Speleos*, 824 F. Supp. 2d at 235 (denying motion to dismiss and deferring resolution of

the issue to later stage of the proceedings).

In contrast, cases involving only technical HAMP violations have been dismissed.

*Markle v. HSBC Mortg. Corp.*, 844 F. Supp. 2d 172, 186 (D. Mass. 2011) (dismissing Chapter

93A claim where substance of plaintiffs' claim was that the lender refused to consider them for

HAMP modification despite their eligibility for the program).  Further, courts have held that

general statements of willingness to "work with the borrower" cannot form the basis of Chapter

93A liability because they are too vague to be relied upon.  *Santander Bank Nat. Ass'n.*, 2013

WL 6046012 at *15-16 (no violation where plaintiff could not have reasonably believed that

lender intended to defer foreclosure indefinitely based upon promise to "work with the

borrower").

In this case, while the plaintiff's claim does not specifically invoke Chapter 93A, the

complaint does state facts that would constitute an unfair or deceptive violation of HAMP if

taken as true.  Specifically, the complaint alleges that the defendants actually agreed to modify

the plaintiff's loan but then proceeded to initiate foreclosure proceedings.  Admittedly, the

complaint is not a model of clarity on this point.  Count IV states that the plaintiff's claim is

based upon "dual-tracking," that is, the defendant's decision to pursue foreclosure at the same

time a HAMP application was "pending," suggesting implicitly that the defendant never made a

final decision on the plaintiff's loan modification application.  However, based upon the

plaintiff's clarification at oral argument, and the allegation in paragraph 18 of the complaint that

the defendant actually did promise to modify the plaintiff's loan, the Court finds that the plaintiff has done enough to state a claim based upon the defendant's decision to pursue foreclose after allegedly having agreed to modify the plaintiff's loan.

### 5. Count V does not state a claim for breach of the implied warranty of good faith and fair dealing because the plaintiff has not identified the contract at issue.

Count V is for breach of the implied covenant of good faith and fair dealing. The defendant did not brief this claim in its motion but argued in court that the claim should be dismissed because the plaintiff does not identify a contract. The plaintiff similarly does not address Count V in his opposition to the defendant's motion. Although the Court need not consider arguments that were not raised in the parties' papers, it chooses to do so here in the interest of judicial efficiency.

A covenant of good faith and fair dealing is implied in all contracts. *Markle*, 844 F. Supp. 2d at 183 (citing *Mass Eye & Ear Infirmary*, 552 F.3d at 69). It does not arise independent of a contract and without a contract there is no covenant to be breached. *Id.* (citing *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 569-70 (2010)). That matters here because the plaintiff has not identified a contract in the complaint. Although one might reasonably guess from the facts that the contract at issue, if there is one, must be the mortgage contract, the defendant should not have to guess what it is alleged to have done, and the plaintiff always bears the burden of showing that he is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). Because the complaint does not identify any contract for which the implied warranty was breached, it falls short of establishing the plaintiff's entitlement to relief on this claim. Count V should therefore be dismissed, but with leave to amend if the facts so warrant.

### III.   CONCLUSION

For all of the foregoing reasons, the Court recommends that the defendant's motion for judgment on the pleadings be GRANTED with respect to Counts I, III and V.  The Court recommends that the motion be DENIED with respect to Count II to the extent that Count II alleges that the defendant's failure to respond to the plaintiff's August 30, 2015 letter constitutes a violation of RESPA, and also DENIED with respect to Count IV.  The Court further recommends that, if the District Judge adopts this Report and Recommendation, the plaintiff be given fourteen days from the date the District Judge acts on the Report and Recommendation to file an amended complaint that addresses the pleadings shortcomings discussed herein.

The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  August 15, 2016